United States District Court
Southern District of Texas
**ENTERED**
March 10, 2017
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RAUL CORONADO JR, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. B-14-231 |
| | § | |
| LORIE DAVIS, | § | |
| Respondent. | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of Raul Coronado, Jr.'s 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus (hereinafter, Coronado's "Petition").  Dkt. No. 1.  It is recommended that the Court dismiss Coronado's Petition because his claims are procedurally barred or otherwise do not have merit.  It is further recommended that the Court not grant a certificate of appealability.

## I. Jurisdiction

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241, 2254, which provide that jurisdiction is proper where the petitioner is confined, or where his state conviction was obtained.  *See* 28 U.S.C. §§ 2241, 2254; *see also Wadsworth v. Johnson*, 235 F.3d 959, 961-62 (5th Cir. 2000). Coronado was convicted in Cameron County, Texas.[1]  Jurisdiction is, therefore, proper in this Court.  28 U.S.C. § 124(b)(5).

## II. Standard of Review

### A.  28 U.S.C. § 2254

Pursuant to 28 U.S.C. § 2254(d), a federal court can only grant habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[2] to a defendant convicted in state court, if the state's adjudication of his constitutional claims was: (1) contrary to, or involved an unreasonable application of clearly established federal law, as established by the Supreme Court; or (2) based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 97-98 (2011).  A state court's decision is contrary to clearly established federal law if that court applied a rule contradicting the governing law as set forth by the Supreme Court, or if it reached a different result from those cases on "materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  When a state court decision applies the correct Supreme Court rule to the facts of a particular case, a reviewing court must determine whether the state court's application of law was objectively unreasonable.  *See id.* at 409-11.

A reviewing court cannot issue a writ simply because it finds that the relevant state-court decision applied clearly established federal law erroneously or incorrectly; rather, that application must be unreasonable as well.  *Id.* at 411. Courts determine reasonableness by determining whether no "fairminded jurists could disagree" as to the application of the arguments and theories supporting the

---

[1]  Dkt. No. 1 at 2; 15-3 at 1.
[2]  Pub.L. No. 104-132, 110 Stat. 1214 (1996).

state court's decision to the applicable law. *See Harrington*, 562 U.S. at 102. The standard is "difficult to meet" because "it was meant to be." *Id.*

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility fairminded jurists could disagree* that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," *not a* substitute for ordinary error correction through appeal.

*Id.* at 102-03. (emphasis added) (internal citations omitted).

Further, only the state court's "ultimate legal conclusion" is reviewed for unreasonableness. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*). AEDPA's standard of review applies "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent][,]" even if that state court fails to cite or is unaware of such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*). Finally, a state court's factual findings are presumed correct unless a petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption of correctness also applies to unarticulated findings necessary to the state court's conclusions of mixed law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

### B. Ineffective Assistance of Counsel

The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them. *Missouri v. Frye*, ____ U.S. ____, 132 S.Ct. 1399, 1405 (2012) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). Critical stages include not only trial, but

also pretrial proceedings — including the plea-bargaining process. *Laffler v. Cooper*, ____ U.S. ____, 132 S.Ct. 1376, 1384 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing is also constitutionally impermissible. *Laffler*, 132 S.Ct. 1376, 1385-1386.

In *Strickland v. Washington*, the Supreme Court announced that in order to succeed on an ineffective assistance of counsel claim, a defendant must show both: (1) that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) "the deficient performance prejudiced the defense," and shows "errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Courts need not address both inquiries if the defendant does not sufficiently support one prong, nor must the court address the test in the same order. *Id.* at 697. Under this standard, the defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. As it is easy to second-guess counsel's performance after a conviction or adverse sentence, a fair assessment of performance requires reconstructing the circumstances of counsel's conduct from their perspective at the time rather than look towards the "distorting effects of hindsight." *Id.* at 689. As such, counsel is strongly presumed to have performed adequately, and made decisions using reasonable professional judgment. *Id.* at 690.

Additionally, the sufficiency of counsel's representation may be determined, and indeed substantially influenced, by the defendant's own statements and actions. *Id.* at 691. As stated by the Supreme Court, an attorney's actions are usually based on information supplied by the defendant, and, for example, investigative decisions or potential lines of defense are followed based upon what the client has said. *Id.* Counsel's conversations with the defendant may then be critical to properly assessing his actions in the course of litigation. *Id.*

### III. Procedural History

On September 30, 2010, a jury found Raul Coronado, Jr. guilty of one count of Continuous Sexual Assault of a Young Child, three counts of Aggravated Sexual Assault, and three counts of Indecency with a Child in Cameron County, Texas. Dkt. No. 17-9 at 28. Judgment was entered on October 5, 2010. Dkt. No. 15-3. Coronado directly appealed to the Court of Appeals, Thirteenth District of Texas. There, Coronado presented two issues for review. First, Coronado argued that the trial court erred by denying his motion to suppress the fruit of a search, which resulted in finding fetus remains. *See* Dkt. 16-1 at 5. Second, Coronado argued that the trial court erred by denying his motion for a DNA expert. *Id.* On November 3, 2011, the appellate court affirmed the judgment of the district court in a memorandum opinion. *See generally* Dkt. No. 15-2. Coronado filed a petition for discretionary review with the Texas Court of Criminal Appeals, but the court denied review on March 20, 2012. Dkt. No. 15-9.

Subsequently, Coronado filed for habeas relief in the Texas Court of Criminal Appeals on August 24, 2012, alleging nineteen grounds for relief. *See* Dkt. No. 17-20 at 11-30. A Texas district court issued its recommendation and order on October 10, 2012, wherein it recommended that Coronado's claims be denied. *See* Dkt. No. 19 at 5-11. On June 19, 2013, the Texas Court of Criminal Appeals denied the claims without written order or hearing based upon the findings of the district court. Dkt. No. 17-20 at 2. Coronado claims, however, that he did not receive notice of that decision until October 6, 2014. *See* Dkt. No. 1 Ex. 1 at 1, 2. Coronado filed his instant Petition on October 30, 2014, twenty-four days after allegedly receiving notice of the June 19th decision. Dkt. No. 1.

## IV. Discussion

Coronado's Petition alleges twenty-two claims. *See* Dkt. Nos. 1, 45 (explaining that he did not repeat Claim 5). Respondent argues that many of these claims are procedurally defaulted and are otherwise time-barred by the AEDPA's one-year statute of limitations. Alternatively, should the Court apply equitable tolling, Respondent argues that the claims are meritless.

### A. Procedural Default On Coronado's Claims

Federal habeas courts are guided by rules designed to provide state court judgments with finality and respect, which is necessary to preserve the integrity of the state legal system in a federalist system. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012). This includes the doctrine of procedural default. Procedural default

directs a federal court to decline review of a claim on the merits, including constitutional claims, if a state court declined to hear the claim because a prisoner failed to follow a firmly established state procedural rule. *Id.* That said, a federal court will review the claim on the merits if the prisoner shows "cause" and "prejudice" from a violation of federal law. *Id.*

"Cause" must be "something external to the petitioner, something that cannot fairly be attributed to him[.]" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Ordinarily, cause requires an external impediment, such as ineffective assistance of counsel rising to a constitutional violation, which impeded efforts to follow a state's procedural rule. *See id.* Prejudice, on the other hand, is a stricter standard. A petitioner must show "'not merely that the errors at. . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (internal citation omitted). The Supreme Court further stated that actual prejudice requires showing that the prisoner was denied "fundamental fairness" at trial. *Id.*

In Texas, it is well established that a prisoner cannot receive relief for claims brought in a habeas proceeding that could have been brought on direct appeal. *See Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996, *clarified on reh'g* Feb. 4, 1998); *see also Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004) (recognizing that *Gardner* firmly established that procedural rule). The state habeas court declined to hear a number of Coronado's claims under the rule firmly

established in *Gardner*. *See* Dkt. No. 17-20 at 2 (adopting the recommendation of the trial court regarding Coronado's claims).

In Coronado's state habeas petition, the trial court recommended that the following claims be dismissed because Coronado failed to bring them on direct appeal: Claim 3, denial of self-representation; Claims 5 and 6, severance of the indicted offenses; Claim 7, the constitutionality of Texas Penal Code § 21.02; Claim 8, maintaining restraints during trial; Claim 11, admissibility of the witness's "outcry" statement; Claims 12 and 19, admissibility of allegedly perjured testimony at the guilt and sentencing phases; Claim 14, admissibility of evidence under Texas Rule of Evidence 901; Claim 15, admissibility of extraneous offenses and acts during trial; Claims 16 and 17, the trial court's rulings on the jury charge in both the guilt and sentencing phases. Dkt. No. 17-19 at 6-11.

Coronado argues that Claims 3, 7, 8, and 21 are subject to an exception from the general procedural default rule. *See* Dkt. No. 45 at 15, 18, 20. In specifying those claims, Coronado appears to acquiesce to Respondent's arguments regarding the rest of his claims. *See id.* at 14. The Court does not presume that Coronado wishes to forfeit his remaining claims. The Court nevertheless finds that they are procedurally barred because: (1) there is no reason to believe that they are subject to the procedural default exception; and (2) the *Gardner* rule is an adequate state ground. While Coronado may have adequate cause for the exception, the Court further finds that Claims 3 and 8 are procedurally defaulted because he fails to

show "actual prejudice."[3]  *See Martinez*, 132 S. Ct. at 1320 (ineffective assistance of counsel claim may be sufficient to show cause).   This Court, however, finds that although Claim 7 is not procedurally defaulted, it fails for lack of merit.

As mentioned above, actual prejudice is a stringent standard.  It requires a petitioner to show that the errors at trial worked to his substantial disadvantage and infected his trial with errors of "constitutional dimensions."  *Murray*, 477 U.S. at 494.  Coronado has not made such a showing.

### i.   Claim 3

In Claim 3, Coronado points to two issues regarding self-representation. First, Coronado alleges error during a pre-trial conference in which the trial court denied his request to represent himself.   Dkt. No. 45 at 15.   Second, Coronado alleges the "trial court's erroneously granting the self-representation request" during trial was error.  Dkt. Nos. 1 at 7; 45 at 17 (errors in original).  In a pretrial conference held on April 9, 2010, Coronado requested to represent himself because he felt his lawyer was not a "strong enough lawyer for this type of case" and that Coronado was unable to make his lawyer move the criminal process along.  *See* Dkt No. 16-7 at 5-6, 9.  The trial court noted, however, that his attorney had over 20 years' experience and had been successful in murder trials and other types of complex litigation.  *Id.* at 9.  As highlighted by the court, hearing and trial dates are set by the courts, not the litigants; so his attorney had no ability to speed up that

---

[3] Claim 21 alleges ineffective assistance of counsel.  These claims generally are not brought on direct appeal in Texas. *See Ibarra v. Thaler*, 687 F.3d 222, 227 (5th Cir. 2012) (overruled on other grounds). Claim 21 is discussed later in this Report and Recommendation, as it clearly cannot be dismissed under a procedural default theory.

process. *See id.* at 9-10. Further, as stated by the assistant district attorney prosecuting the case, the state was in the process of transferring pending motions from one of Coronado's criminal cases to a previously-indicted case. *See id.* at 7-8. The prosecution indicated that dismissal of the original indictment would follow, thereby slowing the process further. *See id.* The trial court then denied Coronado's request and explained to him that trial would commence on June 1, 2010. *See id.* at 11-12.

As for the court's mid-trial ruling, Coronado requested to represent himself, and the court granted his request after admonishing him regarding the required courtroom decorum. *See* Dkt. No. 17-3 at 3-6. Specifically, the trial court instructed Coronado that he must conduct himself in a professional manner, that he would be bound by the rules of evidence and procedure, and that self-representation was ill-advised as he lacked the experience of his attorney. *Id.* The trial court, however, appointed Coronado's attorney as standby counsel. *Id.* Coronado then examined witnesses himself but finally withdrew from self-representation during an inquiry into whether he invoked his right to an attorney during a police interrogation. *See* Dkt. No. 63 at 28-33.

In both instances above, Coronado has not shown prejudice. First, during the pretrial conference, the trial court explained to Coronado that self-representation would not speed up the criminal justice process. *See* Dkt. No. 16-7 at 10-11. Further, the trial court explained to Coronado that his attorney was suited for his type of case, and had been successful in similar cases. *Id.* at 10. Thus, the state

court attempted to alleviate the only concerns Coronado had about his attorney. *See id.* at 6-7. This indicates that denying his request did not prejudice Coronado. Second, while the state court denied Coronado the opportunity to represent himself during the pre-trial conference, Coronado was allowed to represent himself during the trial. *See* Dkt No. 17-3 at 6. Coronado eventually chose to keep his appointed counsel. *See* Dkt. No. 63 at 32-33. Coronado cannot claim prejudice from the court granting his motion for self-representation, which was of limited duration. For these reasons, the Court finds that Coronado has not shown actual prejudice as to Claim 3.

### ii.     Claim 7

In Claim 7, Coronado argues that Texas Penal Code § 21.02 is unconstitutional because it does not require unanimity for all essential elements of the crime. Coronado does not allege with specificity whether the statute is unconstitutional under the United States or Texas Constitution. The Court presumes, however, that Coronado refers to both. Coronado argues that his claim is not subject to procedural default because the state court did not support its denial based on the rule in *Gardner*, but instead denied the claim on its merits. Even assuming Coronado's claim is not procedurally defaulted for that reason, Coronado's claim is meritless. Further, the claim could rest on independent state grounds.

A reviewing court will not consider a claim if the lower state court judgment rests on a state law ground that is both independent of and forms an adequate basis from the merits of a federal claim. *Harris v. Reed*, 489 U.S. 255, 260 (1989). Courts

employ the "plain statement" rule to determine whether a court's reference to law constitutes an adequate and independent state ground. *Id.* at 261. "[W]hen,. . . a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, [a court] will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so." *Mich. v. Long*, 463 U.S. 1032, 1040-41 (1983).

Here, the state court has not plainly identified a state ground for its judgment. The state court stated "[f]ollowing the doctrine of stare decisis, . . . TEX. PEN. CODE § 21.02 has been held to be constitutional and that it does not violate the unanimity requirement by various appellate courts." *See* Dkt. No. 17-19 at 7. The state court made no reference as to which constitution upheld the law. *See id.* Therefore, the face of the opinion does not clearly identify a state court ground because the opinion could reference both the United States and Texas constitutions. The state court's opinion could be construed to assume a reference to the Texas constitution, since it references multiple Texas courts issuing similar opinions. This approach would require the Court to write in language and disregard its instruction to presume application of federal law when a state court opinion is ambiguous. Thus, this Court finds that the claim is not procedurally defaulted through an adequate state ground. The claim, however, fails regardless of whether the United States or Texas Constitution applies.

Section 21.02 of the Texas Penal Code does not violate any constitutional requirements under the Texas Constitution. *See Render v. State*, 316 S.W.3d 846, 856-58 (Tex. App. 2010); TEX. PENAL CODE § 21.02. In *Render*, the Court of Appeals for the Fifth District of Texas also dismissed the defendant's argument that § 21.02 violated the United States Constitution. *Id.* at 857-58. Like Coronado, the defendant in *Render* argued that the statute was invalid because the individual acts that comprised the continuous sexual assault required unanimous agreement by a jury. *See id.* at 857. As noted by the Texas appellate court in *Render*, however, the Supreme Court has made clear that statutes like § 21.02 do not require unanimity in determining responsibility for the underlying crimes. *Id.* at 857-58; *Richardson v. United States*, 526 U.S. 813, 818 (1999) ("If the statute creates a single element, a 'series,' in respect to which individual violations are but the means, then the jury need only agree that the defendant committed at least three of all the underlying crimes the Government has tried to prove. The jury need not agree about which three. On the other hand, if the statute makes each "violation" a separate element, then the jury must agree unanimously about which three crimes the defendant committed."); TEX. PENAL CODE § 21.02 (criminalizing the continued sexual abuse of a child through a general finding that a defendant committed two or more enumerated acts within a period of thirty days, rather than specific findings regarding what particular acts were committed).

Like Coronado, the defendant in *Render* also argued that § 21.02 unconstitutionally allows for conviction without jury agreement as to the theory of

the case or which acts the defendant committed or when the act took place.  *See Render*, 316 S.W.3d at 858.  This is a slightly modified version of Coronado's argument discussed above.  If a state court has determined that statutory alternative acts are merely alternative means of committing an offense rather than independent elements of a crime, then a federal court cannot review that decision and make a contrary finding.  *See Schad v. Arizona*, 501 U.S. 624, 636 (1991) (plurality).  In *Schad*, the Supreme Court affirmed the judgment of the Arizona Supreme Court, which found premeditation and the commission of a felony were "mere means of satisfying a single mens rea element."  *Id.* at 637.  In fact, the Supreme Court stated that a jury did not have to agree on the preliminary factual issues that underlie the verdict so long as they agree on the "bottom line."  *Id.* at 632-33.  Discussing *Schad* and *Richardson*, the appellate court in *Render* found that the enumerated underlying acts are merely the means of violating § 21.02, as opposed to individual elements of the crime.  *See Render*, 316 S.W.3d at 858. As such, this Court cannot disregard the judgment of the Texas Court of Appeals. Therefore, Coronado's arguments as to Claim 7 regarding unanimity are meritless.[4]

### iii.    Claim 8

In Claim 8, Coronado argues that he is entitled to the procedural default exception because he has alleged ineffective assistance from his counsel's failure to object to Coronado's shackling during the trial.  Dkt. No. 45 at 19.   Further,

---

[4] Even if this Court did disregard the court's determination in *Render*, it is unclear whether this aids Coronado. The Supreme Court has continuously reaffirmed it's plurality opinions finding non-unanimous state court verdicts constitutional under the Due Process clause. *See, e.g., Johnson v.*

Coronado argues that he was prejudiced by this constitutional violation. *Id.* Respondent argues that any prejudice was overcome by the overwhelming evidence of guilt presented at trial. *See* Dkt. No. 26 at 32-33. Further, Respondent argues that Coronado fails to invalidate the state court's decision to dismiss his claim. *Id.* at 33.

The Constitution forbids the use of visible shackles during the guilt and penalty phases of a trial, "unless that use is 'justified by an essential state interest' -- such as the interest in courtroom security -- specific to the defendant on trial." *Deck v. Missouri*, 544 U.S. 622, 624 (2005). Where a court does not provide adequate justification, a defendant is presumed to be prejudiced for due process purposes by the court's order to wear shackles that can be seen by the jury. *Id.* at 635. In these situations, a state may rebut this presumption by proving "'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.'" *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967).

However, on collateral review, the Supreme Court rejected *Chapman*'s standard in favor of a more deferential standard that respects the concerns of finality, comity, and federalism that are inherent in federal habeas review. *See Fry v. Pliler*, 551 U.S. 112, 116 (2007). Under the *Brecht* standard, an error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Restated, an error is harmless unless the petitioner suffers "actual prejudice." *Id.* As stated by

---

*Louisiana*, 406 U.S. 356 (1972). Therefore, lack of unanimity regarding underlying acts constituting a violation of § 21.02 would not result in a constitutional violation.

the Supreme Court, the *Brecht* standard applies regardless of whether the lower state court recognized a constitutional error and applied *Chapman*'s "harmless beyond a reasonable doubt" standard.  *See Fry*, 551 U.S. at 121-22.

The state court dismissed Coronado's claim for two reasons.  First, the trial court found that Coronado failed to preserve the claim.  Dkt. No. 17-19 at 6. Second, citing two examples, the trial court noted that it "was cognizant and careful about the jury being restricted from seeing the restraints on the Applicant."[5]  *See id.* at 7.  For example, while Coronado represented himself, the trial court did not allow the defense or prosecution to approach the witness stand or bench, nor did it allow Coronado to be removed from the courtroom while in the presence of the jury. *Id.*  However, nothing in the record indicates this was done because Coronado was required to wear leg shackles.  For example, the trial court did inform Coronado that he was not to approach the witnesses or bench and that all items should be given to the bailiff.  However, this was in the context of Coronado's motion for self-representation; not as a result of his use of leg shackles.  *See* Dkt. No. 17-3 at 6-10. Further, at multiple points during a trial, the *Texas Bench Book* anticipates normal courtroom procedure to include the defendant being required to remain in place until the jury is removed.  *See generally* TEX. CTR. FOR THE JUDICIARY, TEX. BENCH BOOK 1994 ed.  Further, the record appears completely devoid of any reference to Coronado's use of leg shackles.  *See generally*, Dkt. Nos. 16-17, 63.  In fact, the trial

---

[5] Prior to this, the court also stated "[t]his court. . . made various rulings to ensure that use of restraints would prejudice the Applicant."  *See* Dkt. No. 17-19 at 7. While this Court realizes the obvious error, only the examples following the state court's statement allowed this Court to

court did not mention any restraints used on Coronado, nor did it identify reasons why Coronado should wear any restraints. *See id.* It was error to force Coronado to wear shackles that could have been seen by the jury during trial without making findings on the record as to their necessity.

Finally, the state habeas court determined that Coronado "failed to show harm from [the trial] [c]ourt's decision to use restraints." Dkt. No. 17-9 at 7. The state habeas court did not properly apply the Supreme Court's holding in *Deck*. As the trial court did not make any findings regarding the use of shackles that could be seen by the jury, prejudice should have been presumed. *See Deck*, 544 U.S. at 635. The state court misapplied clearly established Supreme Court precedent. This Court's duty under *Brecht* is to review these claims for "actual prejudice," despite its finding that Coronado was presumptively prejudiced by the trial court's error. Coronado, however, cannot be granted relief because the record does not show Coronado was actually prejudiced from the trial court's error.[6]

Coronado alleges that he was forced to be barefoot and wear leg shackles. *See* Dkt. Nos. 1 at 12; 17-20 at 57. Apart from this, he wore a suit and tie. Dkt No. 1 at 12. Coronado further states that while in court he showed his mother, who was behind him, that he was wearing leg shackles instead of the shoes she gave him. *Id.* Coronado alleges that the shackles caused him embarrassment due to the noise

---

understand the state court's meaning. Without those examples, this Court would have presumed the state court conceded prejudice for the purposes of this analysis.

[6] The Court recognizes that its duty under *Brecht* creates an undeniable constitutional paradox. As here, a state court can misinterpret constitutional law and fail to hold the government to any burden; yet, a federal court on review cannot grant relief because the Petitioner is unable to show that he was actually prejudiced by the violation and its effect on the jury, which is the precise inverse of the government's burden under the law.

they made and because he was forced to expose his toenails.  *See* Dkt. No. 17-20 at 57.  Coronado further states that he could not properly communicate with his attorney because of the noise made by the shackles.  *Id.*  Coronado alleges a different outcome would have occurred had he not been forced to wear shackles, as he would have been able to concentrate on his defense.  *Id.* Coronado's mother largely repeats these allegations, stating that she could hear and see the shackles as she passed him on her way to the witness stand.  *See* Dkt. No. 17-20 at 56.

While certainly aiding Claim 8, the record falls short of showing Coronado was actually prejudiced by the leg shackles because it fails to show that the jury could actually see or hear the shackles themselves.  *See id.* at 56-57 (largely showing that witnesses could see the shackles while passing the defendant's table, or that those in the galley could see if shown).  This Court does not imply that a defendant's embarrassment or ability to communicate with his attorney are not important considerations in determining whether a defendant is prejudiced. However, as shown in *Deck* and its supporting case law, much of the prejudice in openly wearing shackles stems from associations the jury makes based on visual cues of guilt.  *See Deck*, 544 U.S. at 630, 634.  For these reasons, as to his Claim 8 allegations, Coronado has not shown actual prejudice from the trial court's error, and the claim is subject to dismissal.

### B. Whether Coronado's Remaining Claims Are Time-Barred

Respondent argues that Coronado's statute of limitations period was extended until March 13, 2014, because his state habeas petition tolled the

limitations period until the state petition was decided.  Dkt. No. 26 at 9.  However, Respondent also argues that Coronado does not qualify for equitable tolling because: (1) there is competing evidence as to when he received notice that his state petition was denied; and (2) Coronado has not diligently pursued his rights.  *Id.* at 10-11.  A litigant seeking equitable tolling has the burden of showing that extraordinary circumstance stood in his way and that he has diligently pursued his rights.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Respondent concedes that failure to receive notice may establish a sufficient extraordinary circumstance.  *See* Dkt. No. 26 at 10-11 (citing *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000)).  The Court finds that Coronado has shown an extraordinary circumstance occurred in that he did not receive notice as to the disposition of his state habeas claim until October 6, 2014. Coronado's "case events" sheet clearly lists three significant events.  First, a notice that Coronado's claims were denied was originally sent on June 19, 2013.  *See* Dkt. No. 64 at 3.  However, mail logs show that he did not receive this "white card" notice.  *See* Dkt. No. 62-9 at 1-58.  Second, notices regarding three supplemental motions were sent on July 11, 2013.  Dkt. No. 64 at 2.  These notices did not inform Coronado as to the disposition of his petition, despite being mailed after the court made its decision.  *See id.* at 5-7. Mail logs indicate these notices were the first correspondence received by Coronado. *See* Dkt. No. 62-9 at 58.  Finally, a status report regarding the disposition of Coronado's petition was sent from the Texas Court of Criminal Appeals on September 24, 2014.  Dkt. No. 64 at 2.  Mail logs show that Coronado received this

correspondence on October 6, 2014. *See* Dkt. No. 62-12 at 58.  This correspondence clearly states that his petition was denied on June 19, 2013.  *See* Dkt. No. 64 at 9. Thus, the Court finds that Coronado has shown an extraordinary circumstance for equitable tolling because of the substantial delay in receiving notice that his claims were denied.

Citing *Hardy v. Quarterman* and a couple of unpublished opinions, Respondent argues that Coronado failed to diligently pursue his rights because he did not request a status update on his case after more than one year had passed since filing his claims.  *See* Dkt. No. 26 at 12.  Determining diligence, however, is more than simply counting the number of requests or how soon a litigant requests status updates from a state habeas court.  In *Hardy*, for example, the Fifth Circuit placed importance on a petitioner's inquiries regarding the status of his case.  *See Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009).  In *Coker* and *Lewis*, two unpublished decisions cited within *Hardy* and Respondent's brief, the Fifth Circuit also placed importance on factors such as: (1) how long a habeas petition was filed after a conviction became final; (2) other filings sent by a petitioner to a state habeas court; and (3) how long the petitioner waited to file his federal petition after receiving notice that his claims were denied.  *See Coker v. Quarterman*, 270 Fed. Appx. 305, 310 (5th Cir. March 17, 2008); *Lewis v. Cockrell*, 2001 U.S. App. LEXIS 31539 *6 (5th Cir. 2001); *see also Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (primarily relying on the short amount of time between petitioner learning his petition was denied and his filing for relief in federal court).  Upon

consideration of these factors, the Court finds that Coronado diligently pursued his rights.

The Court's finding is based on its consideration of several factors.  First, Coronado applied for federal relief only 24 days after receiving notice that his state petition was denied.  *See* Dkt. No. 1 at 10.  Relatedly, Coronado also filed his state petition only three months after his conviction became final.  *See* Dkt. No. 15-9 (petition for discretionary review denied on March 20, 2012); 17-20 at 3 (noting that Coronado filed his state petition on September 24, 2012).  Second, Coronado filed multiple supplemental motions throughout the life of his state petition.  *See* Dkt. No. 64 at 3.  This suggests that Coronado did not simply forget about his claims, but instead was an active participant in the process.  Finally, when considering the number of claims and the extensive trial record, Coronado's delay in requesting an update on the status of his state petition does not conclusively demonstrate a lack of diligence.  For example, Coronado waited nearly 14 months after learning that his supplemental motions were denied before inquiring about the status of the state petition.  *Id.* at 2-3.  The court, however, took almost a year to rule on Coronado's supplemental motions.  *See* Dkt. No. 64 at 2-3.  Further, Coronado's state petition contained 19 claims, and the record relating to these claims was extensive.  *See* Dkt. Nos. 17-20, 21, 22.  A pro se litigant could reasonably believe that a court required extensive time to rule on a lengthy and complicated habeas petition with an extensive record, especially after the court required almost a years' time before ruling on supplemental motions.  For these reasons, the Court further finds that

Coronado was diligent in pursuing his rights.

### C. Whether Coronado's Remaining Claims Have Merit

As Coronado's Petition is subject to equitable tolling, Claims 1, 2, 4, 9, 10, 13, 18, 20, 21, and 22 remain for this Court's consideration.  As Claims 10, 13, 20, 21, and 22 contain allegations of ineffective assistance of counsel, they are discussed together, although not in the order presented.

####    i.    Claim 1

In Claim 1, Coronado alleges that the trial court erred by failing to suppress evidence obtained during an illegal search and seizure.  *See* Dkt. No. 1 at 6. Coronado states that the search was illegal because the police did not get a warrant, but "opted to get consent from [the] landlord" instead.  *See id.*  Coronado further alleges that, as he and the renter were married for over ten years, he had "standing rights to his family[.]"  *Id* (error in original).  Respondent argues that the claim is not cognizable in a habeas proceeding because Coronado had previous opportunities for "full and fair litigation" of his claim.  Dkt. No. 26 at 19.

Respondent is correct.  Federal habeas relief is not available to a petitioner where the state provided an opportunity for full and fair litigation of a Fourth Amendment claim.  *Stone v. Powell*, 428 U.S. 465, 496 (1976).  There is no reason to believe that Coronado was not provided a full and fair opportunity to litigate his claim.  Coronado appealed this claim to the Court of Appeals for the Thirteenth District of Texas, which denied the claim on its merits.  *See* Dkt. No. 15-2 at 3-5. The appellate court denied Coronado's claim because he lacked standing to

challenge the search, as he did not have a reasonable expectation of privacy in the location searched. *See id.* That court correctly stated the factors set out by the Supreme Court to determine whether a defendant had a reasonable expectation of privacy, and applied them reasonably. *See id.* at 5. For example, the appellate court found that Coronado did not have a reasonable expectation of privacy in the home because he had not lived there for over a year when the house was searched and therefore had no possessory or property interest in the home that was consistent with historical notions of privacy. *Id.* Thus, the Court finds that Coronado had the opportunity for full and fair litigation of his claim.

The trial court also denied Coronado's motion to suppress on additional grounds. *See* Dkt. No 16-8 at 44. During the hearing held on Coronado's motion to suppress, affidavits and testimony supported a finding that exigent circumstances based on a risk of evidence destruction, coupled with the fact that the officers had consent to search the premises. *See id.* at 31-44. Exigent circumstances and consent to search an area are valid exceptions to the Fourth Amendment's warrant requirement. *See Payton v. New York*, 445 U.S. 573, 590 (1980); *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973). The Court finds that the trial court did not err in its denial of the motion to suppress and that Claim 1 is subject to dismissal.

### ii.    Claim 2

In Claim 2, Coronado claims that the trial court erred by denying his motion to appoint a D.N.A. expert to assist in his defense. *See* Dkt. No. 1 at 6. Respondent argues that Coronado has not shown actual prejudice as a result of the trial court's

denial, a requirement under the deferential standard applied to state court decisions.  *See* Dkt. No. 26 at 20. Respondent, further argues that Coronado does not show how the trial court failed to reasonably apply the law. Coronado retorts that the error was "per se" prejudicial and that Respondent has not shown that the error was harmless.  *See* Dkt. No. 45 at 25.

The Supreme Court has held that the Due Process Clause requires that an indigent defendant be provided a fair opportunity to present his defense. *See Ake v. Oklahoma*, 470 U.S. 68, 76 (1985).  In determining whether a defendant is entitled to an expert for his defense, courts weigh three factors: (1) the private interest that will be affected by the action of the State; (2) the governmental interest that will be affected if the safeguard is to be provided; and (3) the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided. *Id.* at 77.  It is the defendant's burden to show that the expert's testimony would be beneficial.  *See Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985).  Texas state courts have required that a defendant must offer more than undeveloped assertions. *See Rey v. State*, 897 S.W.2d 333, 339 (Tex. Crim. App. 1995).  These courts typically hold that defendants must support their motions with evidence supporting or explaining a defensive theory, and the need for an expert to aid the defense in proving that theory or questioning the state's own expert or evidence.  *See id.* at 341.

Texas's Thirteenth Court of Appeals denied Coronado's claim because

Coronado failed to show that the trial court erred by denying the motion to suppress. *See* Dkt. No. 15-2 at 8. In fact, the appellate court stated that, despite Coronado's assertion that affidavits were filed along with the motion, the record was devoid of these affidavits. *Id.* at 7. Further, the court noted that the argument contained in the motion was brief and that it did not provide further support for Coronado's motion at the hearing. *See id.* At the hearing, Coronado's attorney made no mention of affidavits supporting the referenced motion, and made only a conclusory statement that Coronado was entitled to a D.N.A. expert because the prosecution made D.N.A. identification an issue of proof. *See* Dkt. No. 16-9 at 6. The Court of Appeals then properly denied Coronado's claim because his motion's assertions lacked evidentiary support. Dkt. No. 15-2 at 8; *see Rey*, 897 S.W.2d at 339, 341.

Coronado argues that affidavits were filed, and that his counsel was ineffective for failing to ensure those affidavits became part of the appellate record. *See* Dkt. No. 45 at 23. However, this argument does not subtract from the appellate court's finding. Even if this Court considers the affidavits provided by Coronado, the affidavits do not help Coronado meet his burden in showing the court misapplied the law, let alone that it did so unreasonably. For example, Coronado's attorney's affidavit states that the expert was necessary to assist in evaluating the methodology used, to determine rate of error, to show the possibility of contamination, and for effective cross-examination. *See* Dkt. No. 45-4 at 4. But, Coronado's attorney did not present any information that would lead a court to

believe there were problems with the evidence, as it was presented by the State's expert. *See Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993) (upholding a trial court's denial of a forensic and ballistic expert when the attorney does not offer evidence suggesting a reasonable probability that an expert would have been of assistance and that findings of the State's witness were inaccurate or subject to dispute). Coronado's affidavit also fails to provide any assistance. There, Coronado explains that his theory of the case was that his daughter and her mother fabricated the charges in retaliation for Coronado leaving his family for another woman. *See id.* at 5. Coronado further states that the D.N.A. results are incorrect, as he did not commit the crime. *Id.* Coronado's assertions provide no support as to why he required his own expert or how an additional expert would be useful to his defense. Instead, Coronado appears to contest the reliability of the test results. For the reasons above, the Court finds that Coronado has not shown that the Texas appellate court unreasonably applied the law. Claim 2 is therefore subject to dismissal.

### iii. Claim 4

In Claim 4, Coronado alleges that he was denied an impartial jury because there were not any "blacks" on the jury. Dkt No. 1 at 7. Coronado further alleges that he was denied an impartial jury due to his counsel's failure to object to the jury's composition. *See id.* Respondent argues that Coronado fails to show any reason that would have required his trial counsel to object to the composition of the jury. *See* Dkt. No. 26 at 25. Again, Respondent is correct. Coronado has failed to

provide any evidence that his counsel's performance was deficient, or that the composition of the jury prejudiced him at trial.  Further, Coronado has not shown that the state habeas court unreasonably applied the law when determining this claim.

As announced by the Supreme Court, a hallmark of the jury tradition is that the jury is a body truly representative of the community.  *See, e.g.*, *Smith v. Texas*, 311 U.S. 128, 130 (1940).  Despite a defendant's interest in a representative jury, the overriding consideration is the denial of a potential juror from "making a significant contribution to governance on account of race."  *See Johnson v. California*, 545 U.S. 162, 172 (2005).  Regardless of the primary equal protection consideration, a defendant may challenge the composition of his jury under the Due Process and Equal Protection clauses.  In doing so, a defendant is entitled to rely on the fact that the use of peremptory challenges is a jury selection practice that would permit discrimination for those "who are of a mind to discriminate."  *Batson v. Kentucky*, 476 U.S. 79, 96 (1986).  To show a prima facie case, a defendant must first show that "'he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.'"  *Holland v. Illinois*, 493 U.S. 474, 476-77 (1990) (quoting *Batson v. Kentucky*, 476 U.S. 79, 96 (1986)).  Finally, a defendant must show that the fact mentioned above and any other relevant circumstances raise an inference that the prosecution used peremptory challenges to remove the venire members on account of their race.  Coronado has failed to do so, for the reasons stated below.

First, Coronado is Hispanic, not African-American.  *See* TEX. DEP'T OF CRIM. JUSTICE, OFFENDER SEARCH: RAUL CORONADO, https://offender.tdcj.texas.gov/Offend erSearch/offenderDetail.action?sid=04152209 (last visited Feb. 23, 2017).  Further, Coronado fails to point out any practice by the prosecution that resulted in a discriminatory effect.  *See* Dkt. No. 1 at 7.  Instead, Coronado simply states that he was denied an impartial jury by the exclusion of African-Americans.  *Id.*  These facts alone fail to support Coronado's claims of violations of the Due Process or Equal Protection Clauses stemming from the lack of African-Americans on his jury.

However, even assuming Coronado's own race supported his claim and he could show there were African-Americans excluded from the venire pool, which would allow him to identify a prosecutorial practice that excluded African-Americans, important circumstances exist that would tend to dissolve any inference of discrimination.  When Coronado was convicted in 2010, African-Americans comprised only 0.5% of all residents in Cameron County, Texas.  *See* UNITED STATES CENSUS BUREAU, QUICK FACTS: CAMERON COUNTY TEX., http://www.census.gov/quick facts/table/RHI125214/48061,00 (last visited Feb. 23, 2017).  This circumstance would indicate that even benign use of peremptory challenges would create an apparent discriminatory effect given the low number of African-Americans in Cameron County.  Thus, as Coronado cannot show a prima facie violation, his counsel cannot be found to be ineffective for failing to object to the lack of African-Americans on the jury.  Accordingly, Claim 4 is subject to dismissal.

### iv.   Claim 9

In Claim 9, Coronado alleges a double jeopardy violation because he was indicted under three counts of "Aggravated Sexual Assault" and three counts of "Indecency of a Child", which he claims occurred at the same time. *See* Dkt. No. 1 at 12-13. Coronado further alleges that "[s]ince severance was denied the State did not prove these offenses." *Id.* at 12. Coronado claims that the state instead offered evidence of extraneous offenses, and essentially "double-charged" him for every completed "touching" or penetration. *See id.* at 12-13. Respondent argues that Coronado failed to establish a double jeopardy violation. *See* Dkt No. 26 at 33.

The Double Jeopardy Clause in the Fifth Amendment to the United States Constitution provides defendants three basic protections against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *See Ohio v. Johnson*, 467 U.S. 493, 498 (1984). The third protection, which Coronado alleges Respondent violated, is designed to ensure the courts do not overreach into the legislature's powers to prescribe crimes and determine punishments. *See id.* at 499. In *Blockburger*, the Supreme Court announced that conviction and punishment under two statutes, both satisfied by a single act, is constitutionally valid under the Double Jeopardy Clause if each statute "requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The prohibition against punishing the same act under two statutes can be overcome only if there is a clear indication of contrary legislative intent. *See Whalen v. United States*, 445 U.S. 684, 692 (1980). A federal court reviewing state

statutes must respect a state court's construction of a statute, but may ultimately reject the legal conclusion on whether the statute violates the Double Jeopardy Clause. *Mo. v. Hunter*, 459 U.S. 359, 368 (1983).

Coronado was indicted and charged with three counts of "Aggravated Sexual Assault of a Child" and three counts of "Indecency With A Child." *See* Dkt. No. 17-22 at 46. "Aggravated Sexual Assault of a Child" is a variation of sexual assault. *See* TEX. PENAL CODE § 22.021(1)(B). A person is guilty of violating § 21.021 if he intentionally or knowingly commits, against a person under the age of 17, any of the enumerated sex acts including any of the listed aggravating factors. *Id.* A person is guilty of committing the offense of "Indecency with a Child," if he engages in or causes a child to engage in sexual contact or, with the intent to arouse or gratify sexual desire, exposes his anus or genitals knowing a child is present or causes exposure of a child's anus or genitals. *See* TEX. PENAL CODE § 21.11. Not only does the "Aggravated Sexual Assault of a Child" require specific predicate sex acts, rather than general sexual contact, but it also requires an additional element converting it to an aggravated offense. Aggravating factors can include use of a deadly weapon, causing serious bodily injury, placing the victim in fear, or using a drug to incapacitate the victim. *See* TEX. PENAL CODE § 22.021(2)(A). While potentially overlapping, these statutes punish fundamentally different crimes, as "Aggravated Assault of a Child" requires proof of an additional element regarding the type of force used or the victim's characteristics. Therefore, the Court finds that the statutes do not violate the Double Jeopardy Clause under

the *Blockburger* test. Claim 9 is subject to dismissal.

      **v.**    **Claims 18 and 21(17)**

In Claim 18, Coronado argues that he received an "unauthorized sentence" because he is serving seven concurrent life sentences without the eligibility for parole. Dkt. No. 1 at 18. Coronado argues that he should be eligible for parole after serving 40 years of his concurrent sentences. *Id.* Respondent argues that the state habeas court found that because Coronado was convicted of "Continuous Sexual Abuse of a Young Child" he was not entitled to parole. Dkt. No. 26 at 48-49. Therefore, Respondent argues this claim is meritless and should be denied. *Id.* In Claim 21(17), Coronado asserts that his appellate counsel failed to argue this issue on appeal. *See* Dkt. No. 1 at 22.

Respondent is correct. Texas Government Code § 508.145 sets forth what type of inmates are ineligible for parole. *See* TEX. GOV'T. CODE § 508.145(a). Inmates serving a sentence for an offense under § 21.02 of the Texas Penal Code, Continuous Sexual Assault of a Young Child, are among the list. *Id.* Coronado was found guilty of Continuous Sexual Assault of a Young Child. Dkt. No. 17-9 at 28. Therefore, under Texas law, Coronado is not eligible for parole. Coronado's Claims 18 and 21(17) lack merit, and should be dismissed.

      **vi.**    **Claims 10, 13, 20, 21, and 22**

As discussed above, Claims 10, 13, 20, 21, and 22 allege that Coronado's trial and appellate counsel provided ineffective assistance. Claims against both Coronado's trial and appellate counsel that mirror each other are discussed

together, although not in the order presented.  For example, many of the allegations in Claim 21 mirror the allegations contained in Claim 20, but focus on Coronado's appellate counsel's performance.  Dkt. No. 1 at 21 (compare Dkt. No. 1 at 20 (Claims 20(2), 20(5), 20(6), 20(12), 20(10), 20(14), 20(15)) with Dkt. No. 1 at 21 (Claims 21(2), 21(4), 21(5) 21(6), 21(10), 21(14), 21(16)).  As the Claim 21 arguments allege the essentially the same violation, they are discussed along with their Claim 20 counterparts.

### a.  Claims 10, 20(16), and 21(12)

In Claims 10 and 20(16), Coronado asserts that his trial counsel was ineffective because he failed to properly file a motion for new trial.  Dkt. No. 1 at 13, 21.  In Claim 21(12), Coronado argues that his appellate counsel failed to argue that his trial counsel failed to file a motion for new trial.  *Id.* at 22.  Coronado alleges that a new trial would have been granted had his attorney made this argument.  *Id.* at 13, 21, 22.  Coronado's analysis is mistaken.

In Texas, an attorney appointed in a criminal case remains the defendant's attorney for all purposes until expressly permitted to withdraw.  *See Benson v. Texas*, 224 S.W.3d 485, 491 (Tex. App. 1st Dist. 2007).  The attorney's representation may even continue until the commencement of the appeals process. *See id.*  The attorney, whether appointed by the court or retained by the defendant, has an obligation and responsibility to consult with the client and fully advise him of the judgment rendered against him by the court.  *See id.*  This includes consulting with the client regarding his right to appeal the judgment rendered, the

necessity of giving notice of appeal, counsel's professional judgment as to possible grounds for appeal, and advice pertaining to the advantages and disadvantages of an appeal. *See id.; see also Ex Parte Axe*, 757 S.W.2d 369, 374 (Tex. Crim. App. 1988). It is presumed that trial counsel continues to effectively represent appellant during the elapsed period between the time the judgment was rendered and the deadline for filing a motion for new trial. *Benson*, 224 S.W.3d at 491.

In Texas, if a motion for new trial is not filed, a rebuttable presumption arises that no motion for new trial was filed because the appellant decided against its filing. *See Oldham v. Texas*, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998). To rebut this presumption, Coronado must first show that he was not adequately represented during the period for filing a motion for new trial. *See id*; *see also Benson v. Texas*, 224 S.W.3d at 491. To prevail, the record must show more than the mere fact that: (1) appellant filed a pro se notice of appeal and indigency; (2) the trial court noted that the appellate attorney was "to be determined"; (3) the trial court appointed an appellate counsel after the expiration of the time for filing a motion for new trial; (4) on appeal, appellant claims that he would have complained about ineffective assistance of counsel in a motion for new trial, had one been presented; (5) appellant appeared in court without counsel when he signed the pauper's oath requesting appointed appellate counsel; and (6) the record shows no activity by trial counsel or any motion filed to withdraw from representation. *Benson*, 224 S.W.3d at 491-92.

Coronado's primary allegation is that he filed a pro se motion for new trial

after his trial counsel failed to do so, and that the pro se filing was inadequate in comparison to what his attorney could have filed.  *See* Dkt. No. 1 at 13.  In Texas, however, this argument has limited merit because a filing of a pro se notice of appeal is evidence that the appellant was informed of at least some of his appellate rights.  *See Smith v.* Texas, 17 S.W.3d 660, at 663 (Tex. Crim. App. 2000); *see also Oldham,* 977 S.W.2d at 362-63.  Coronado fails to present enough facts that would show that his trial and appellate counsel were ineffective, and he also fails to rebut the presumption that his attorneys provided effective assistance.  Therefore, under *Strickland,* Coronado has failed to show that his attorney erred, nor has he shown he was prejudiced by any alleged error.  Thus, Claims 10, 20(16), and 21(12) are subject to dismissal.

### b.  Claims 13, 20(7), and 21(13)

In Claims 13 and 20(7) Coronado alleges that his trial counsel provided ineffective assistance by failing to force the state to "elect" which incident it would prove in order to convict Coronado.  Dkt. No. 1 at 15, 20.  Claim 21(13) alleges that Coronado's appellate counsel provided ineffective assistance by failing to "file trial counsel not electing which it had proven from the six that are electable."  Dkt. No. 1 at 22 (errors in original).  It appears Coronado is alleging his attorneys should have argued that the State was required to prove all of the specific acts actually occurred in order to convict him of three separate counts of Aggravated Sexual Assault, and three separate counts of Indecency with a Child.  *See generally* Dkt No. 1 at 15, 20, 22.  For the reasons stated below, these claims lack merit and should be dismissed.

In Texas, a trial court may decide whether the State will be required to elect between alleged acts of intercourse. *See generally O'Neal v. Texas*, 746 S.W.2d 769, 772 (Tex. Crim. App. 1988). Until a timely request by the defense is made, deciding whether to require the State to elect between acts of intercourse is within the court's discretion. *See id.* If the defense requests that the State makes its election after its case-in-chief, the court must instruct the State to make its election. *O'Neal*, 746 S.W.2d at 772. Following the court's instruction, a State's failure to elect between acts of intercourse constitutes an error by the State, not the defendant's counsel. *See id.* Coronado alleges that his attorney made an election request to the trial court. *See* Dkt. No. 1 at 15. Thus, if the allegation is true, the error resulting from the lack of instruction would fall upon the trial court. *See O'Neal*, 746 S.W.2d at 772. Coronado's allegations, even assuming they were properly alleged against the trial court, are still without merit because an exception to the general rule applies. *See id.* at 771. Generally, the State must elect the act upon which it relies for a conviction when one act of intercourse is alleged in the indictment and more than one act of intercourse is shown by the evidence presented in a sexual assault trial. *Id.* The State is not required to elect a single sexual act, however, when the evidence shows that several acts of intercourse were committed under a continuous threat of force that were part of the same criminal transaction. *See id.*

The exception applies to Coronado's allegations because the record indicates he engaged in continuous acts of intercourse with the victim by a continuous threat

of force.  *See* Dkt. No 15-10 at 10; *see also* Dkt. No. 17-4 at 47.  For example, the victim testified that she was raped "almost every day" by Coronado.  Dkt. No. 17-4 at 45.  The victim further testified she was abused by Coronado so often that she lost count of how many times the abuse occurred.  *See id.* at 44.  During these acts, the victim testified, Coronado threatened her by telling her that he would hurt her and her mother if she told anyone about what happened.  *See* Dkt. No 15-10 at 10; *see also* Dkt. No. 17-4 at 47.  The victim also testified that she was afraid to tell others about the abuse.  Dkt. No. 17-4 at 47.  These threats are sufficient to invoke the *O'Neal* exception.  *See O'Neal*, 746 S.W.2d at 771.  Thus, based on the application of the *O'Neal* exception, Coronado's Claims 13, 20(7), and 21(13) fail and are subject to dismissal.

### c.  Remaining Claim 20 Sub-claims and Claim 21(5), (6), (10), (14), and (16).

Claim 20 alleges that Coronado received ineffective assistance from his trial counsel because his attorney failed to "object acts and omissions."  Dkt. No. 1 at 20 (errors in original).  Rather than presenting factual evidence supporting his contentions, Coronado alleges 16 conclusory subclaims in support of this claim.

In order for Coronado to prevail on this claim, he must meet both prongs of the *Strickland* analysis.  *See Strickland*, 466 U.S. 668, 687 (1984).  To show prejudice, a claimant must demonstrate a "reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Harrington v. Richter*, 562 U.S. 86, 104 (2011).  A reasonable probability

is a probability sufficient to undermine the confidence in the outcome. *Id.* It is not enough for Coronado to simply allege that any error had some "conceivable effect on the outcome of the proceeding." *Id.*

In Claims 20(1) and 20(11), Coronado alleges that his trial counsel was unfamiliar with the "requirements of age to allow hearsay testimony under 38.072" and unfamiliar with the "age requirements to convict under penal code 21.02, continuous sexual abuse." Dkt. No. 1 at 20 (errors in original). Claim 21(10) asserts that Coronado's appellate counsel failed to take issue with the alleged use of "hearsay witness when the complaint was over the age at the time of the outcry." *Id.* at 22 (errors in original). Coronado bears the burden of demonstrating how his counsel's unfamiliarity with the law prejudiced his defense. *See generally Motley v Collins*, 18 F.3d 1223, 1227 (5th Cir. 1994) (requiring petitioner to allege how counsel's unfamiliarity with the law prejudiced petitioner). Other than conclusory allegations, Coronado fails to provide the Court with factual support showing how he was prejudiced by his counsel and their alleged unfamiliarity with the law. *See* Dkt. No. 1 at 20, 22. Thus, Coronado has failed to demonstrate prejudice, and sub-Claims 20(1), 20(11), and 21(10) are subject to dismissal.

Coronado also alleges a series of subclaims maintaining his trial counsel's "failure" to object. *See generally* Dkt. No. 1 at 20. Claim 20(2) alleges that Coronado's trial counsel "failed to object to his client being in feet shackles for the entire proceeding." *Id.* Claim 20(3) alleges that his trial counsel "failed to object to the "hundreds of extraneous offenses, acts, or bad conduct not proven by the State".

*Id.* Claim 20(5) alleges that Coronado's trial counsel failed to object to the "State not proving its client's blood sample through requirements of a chain of custody rule." *Id.* (errors in original). Claim 21(14) argues that Coronado's appellate counsel failed to argue that his trial counsel failed to require the State to "show Petitioner's blood sample" under Texas Rule of Evidence 901. *Id.* at 22; TEX. R. EVID. 901. Claim 20(12) contends that trial counsel failed to object to "the numerous unproven misconduct and perjury by the state knowing it to be false." *Id.*at 20. Relatedly, Claim 21(6) alleges that Coronado's appellate counsel failed to "raise the State's use of perjured testimony and misconducts to obtain a conviction." *Id.* at 21. In Claim 20(13), Coronado alleges that trial counsel failed to "impeach the complainant for falsely testifying under oath when affidavits were present to prove otherwise of complainants fetus scenario." *Id.* at 20 (error in original). Claim 20(14) contains Coronado's allegations that his trial counsel failed to object to a "defective jury charge on the guilty/innocence phase." Claim 20(15) alleges his trial counsel failed to object to the "defective jury charge on the punishment phase." *Id.* Finally, Claim 21(16) alleges that Coronado's appellate counsel failed "to argue trial counsel's failure to object to the jury charges at the innocence and punishment stages of trial." *Id.* at 22.

The United States Supreme Court acknowledges a "strong presumption" that an attorney's attention to some issues or the exclusion of others is the result of trial tactics and not "sheer neglect." *Richter*, 562 U.S. 86, at 109. Furthermore, counsel is entitled to formulate strategies and balance limited resources regarding issues

that will not distract from the important issues. *Id.* at 107. First, Coronado fails to show that chain of custody was an issue at trial. *See generally* Dkt. Nos. 17-2 – 17-3. The record also indicates that Claims 20(12) and 20(13) lack merit, as testimony from the witnesses is consistent with their affidavits. *See e.g.* Dkt. No. 17-4 at 46-47; Dkt. No. 17-1 at 51; Dkt. No. 16-5. Coronado has not demonstrated how his counsel's failure to object was the product of ignorance or oversight, rather than a deliberate trial tactic. *See* Dkt. No. 1 at 20-22; *see also Murray v.* Carrier, 477 U.S. 478, 485 (1986). Since Coronado fails to present any claim or evidence to rebut the presumption that counsel's failure to object was part of trial strategy, the claims are also meritless. *See Richter*, 562 U.S. 86. Thus, Coronado's Claims 20(2), (3), (5), (12), (13), (14), (15), and 21(6), (14), and (16) lack merit and should be dismissed.

In Claim 20(4), Coronado alleges his trial counsel failed to "limit the instruction on any evidence presented by the State." Dkt. No. 1 at 20. (error in original). Coronado fails to show which instruction was unconstitutional. *See id.* Regardless of whether trial counsel failed to object to an unconstitutional jury instruction, habeas relief from a state conviction may be denied when there was an "overwhelming" amount of evidence upholding petitioner's guilt. *Moward v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998). As discussed in detail above, the record contains sufficient testimony and affidavits to support Coronado's guilty verdict. *See* Dkt. No. 17-4; *see also* Dkt. No. 16-5; Dkt. No. 17-1. Testimony from the police officers that investigated the case further validates Coronado's conviction. *See* Dkt. No 17-2. Most importantly, D.N.A. evidence indicates that Coronado

fathered the fetus found buried in the backyard of the victim's residence, and that intercourse between Coronado and the victim occurred.  *See* Dkt. No. 17-3 at 67-69. Accordingly, even if Coronado identified a jury instruction to which his attorney should have objected, the evidence presented at trial is overwhelming and sufficient to sustain the conviction and deny habeas relief.  Thus, Claim 20(4) is subject to dismissal.

In Claim 20(9), Coronado alleges that his trial counsel "used an alibi witness of proof of residence to show the impossibility of committing penal code 21.002 on punishment phase, further waiving presumption of innocence."  Dkt. No. 1 at 20 (errors in original).  Claim 21(5) alleges that Coronado's appellate counsel failed to argue that trial counsel waived the presumption of innocence.  *Id.* at 21.  Under the same analysis regarding 20(2), 20(3), 20(14), and 20(15), Coronado fails to present any evidence rebutting the presumption that counsel's actions were not a result of trial strategy.  *See id.*  Accordingly, Claim 20(9) and 21(5) is subject to dismissal.

In Claim 20(10), Coronado alleges that his trial counsel failed to investigate the age of the victim and the victim age requirements for the offenses for which he was convicted.  Dkt. No. 1 at 20.  A defendant alleging a failure to investigate by his counsel must also allege with specificity what the investigation would reveal and how the failure to investigate would have changed the outcome of the trial. *Anderson*, 143 F.3d 942, at 948.  Coronado fails to allege with any specificity what a hypothetical investigation would have revealed, or how such failure to investigate altered the outcome of his trial.  Accordingly, Claim 20(10) is subject to dismissal.

In Claim 20(8), Coronado alleges that his trial counsel was ineffective by "re-arguing Motion to Waive Counsel when it had already been properly denied during pre-trial." Dkt. No. 1 at 20 (error in original). But, it was Coronado who had requested to represent himself and filed a motion to waive counsel. Dkt. No. 16-7 at 4; Dkt. No. 17-3 at 6. Coronado cannot now claim prejudice from his trial counsel acting on the motion filed by Coronado himself. *Id*. Thus, Claim 20(8) is subject to dismissal.

Finally, Coronado alleges in Claim 20(6) that his trial counsel "waived Petitioner's presumption of innocence before trial twice." Dkt. No. 1 at 20 (error in original). Yet, Coronado does not point to how this happened. *Id.* Assuming his allegations are true, Coronado fails to demonstrate how he was prejudiced, as this allegedly occurred before trial and he was convicted following a trial by jury. *See* Dkt. No. 17-9 at 28. Further, in so far as Coronado argues that his trial counsel was ineffective for attempting to prove that it was impossible for him to have committed the crime, Coronado has failed to show how those attempts prejudiced him. Thus, Claim 20(6) is subject to dismissal.

### d. Remaining Claim 21 Subclaims

In the remaining subclaims contained in Claim 21, Coronado alleges that his appellate counsel provided ineffective assistance because his attorney "failed to raise legitimate grounds with merit and failed to properly raise several meritorious grounds." Dkt. No. 1 at 21 (error in original). Similar to Claim 20, Coronado raises a total of 18 additional conclusory subclaims in support of Claim 21, but fails to

present factual allegations to support them.  *Id.*

Claim 21(2) alleges that appellate counsel failed to "show for Motion for D.N.A. expert . . .  [and] that trial counsel needed the expert for good reason of proof argument and requirement to show innocence."  Dkt. No. 1 at 21 (errors in original). Claim 21(4) alleges that appellate counsel failed to raise the shackling issue on appeal.  *Id.*  In Claim 21(1), Coronado alleges that his appellate counsel improperly argued an illegal search and seizure claim on appeal.  *Id.*  Coronado argues that he had standing to challenge the search of the property. Coronado further argues that he and the renter were married for over ten years and, though separated at the time of the search, there was evidence of reconciliation.  *Id.*  Under Claim 21(3), Coronado alleges that appellate counsel should have raised Coronado's pretrial motion to waive counsel, an error preserved in the trial record.  *Id.*  Furthermore, in Claim 21(7), Coronado argues that appellate counsel "failed to raise on appeal the denial of motion for severance."  *Id.* (error in original).  Claim 21(8) argues that appellate counsel failed to "raise the intertwine of the different laws, statutes, and requirements to convict."  *Id.* (error in original).  Claim 21(9) argues that appellate counsel's "failure to raise on appeal a preserved issue of the denied motion of constitutionality of the omnibus law, Continuous Sexual Abuse of a Child, not requiring a unanimous verdict to convict."  *Id.* (errors in original).  Claim 21(11) contends that appellate counsel failed to "properly raise the double jeopardy charges, three counts of Aggravated Sexual Abuse and three counts of Indecency of a Child."  *Id.* (error in original).  Lastly, Claim 21(15) that asserts appellate counsel

failed "to raise the jurisdiction violation for convicting for offenses allegedly occurring in Dallas County." *Id.* (error in original).  Unfortunately for Coronado, these assertions are also meritless.

As discussed in this Court's analysis of Claims 20(5), 20(12), and 20(13), Coronado is required to rebut the "strong" presumption that counsel's attention to certain issues or the exclusion of others reflects trial tactics rather than "sheer neglect." *Richter*, 562 U.S. 86, at 110.  A defendant is required to meet the two-prong *Strickland* test for claims regarding ineffective assistance of appellate counsel.  *See Smith v. Robins*, 528 U.S. 259, 287 (2000).  Further, an appellate counsel that files a brief on the merits does not, and should not, need to raise every non-frivolous claim, but rather has the discretion to select which claims maximize the likelihood of success on appeal.  S*mith*, 528 U.S. 259, at 288.  Accordingly, the fact that Coronado's appellate counsel failed to raise certain claims on appeal alone does not constitute ineffective assistance or prejudice under *Strickland*.  *See id* at 278.  By failing to present factual support for these contentions, Coronado fails to demonstrate a "reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington v. Richter*, 562 U.S. 86, 106 (2011); *see also Strickland*, 466 U.S. 668 at 694.  Thus, Claims 21(1), 21(2), 21(3), 21(4), 21(7), 21(8), 21(9), 21(11), and 21(15) should be dismissed.

As for Claim 21(18), Coronado argues appellate counsel failed to raise all possible issues pertaining to trial counsel's "ineffective assistance." Dkt. No. 1 at 22.  This, however, is merely a restatement of Claim 21 in its entirety.  Thus, for the

reasons listed above, Claim 21(18) should be dismissed.

### e. Claim 22

In Claim 22, Coronado alleges that the cumulative errors of both his trial and appellate counsel deprived him of a fair trial and violated his due process rights. *See* Dkt. No. 1 at 22.   However, as discussed above, Coronado has failed to demonstrate any error properly attributable to his attorneys.   Coronado also fails to present any factual allegations to support his otherwise conclusory statements that any alleged cumulative errors by his counsel deprived him of due process. Accordingly, Claim 22 should be dismissed.

### III. Certificate of Appealability

A certificate of appealability shall not issue unless the petitioner/movant makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).  This requires a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (internal quotations and citations omitted).  Said another way, where claims have been dismissed on the merits, the movant/petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* at 484.   Where claims have been dismissed on procedural grounds, the movant/petitioner must show that "jurists of reason would find it debatable whether

the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability should not issue in this case as Coronado has not made a substantial showing of the denial of a constitutional right.

## IV. Recommendation

For the reasons above, it is recommended that the Court **DISMISS** Coronado's Petition with prejudice because it plainly appears he is not entitled to relief in this Court. It is further recommended that the Court not grant a certificate of appealability.

## V. Notice to Parties

A party's failure to file written objections within fourteen days after being served with a copy of the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions that the district court accepts, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 10th day of March, 2017.

**Ignacio Torteya, III**
**United States Magistrate Judge**